IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2019 Session

## ERIN ALFORD FULLER v. ROGER DARNELL FULLER

Appeal from the Chancery Court for Bradley County
No. 2014-CV-272     Jerri Bryant, Chancellor

No. E2018-01003-COA-R3-CV

This appeal concerns a redetermination of alimony on remand.  Erin Alford Fuller ("Wife") sued Roger Darnell Fuller ("Husband") for divorce in the Chancery Court for Bradley County ("the Trial Court").  The case was tried, and Husband appealed the judgment.  We determined that the Trial Court properly classified and valued Husband's trail income from his business in the property division but erred by then including, as part of Husband's income, the amount of trail income distributed as a marital asset.[1]  We thus vacated the Trial Court's determinations regarding child support and alimony.  On remand, the Trial Court found that Husband inflated his business expenses.  The Trial Court found that Husband earned approximately $200,000 per year and ordered him to pay Wife $1,500 per month as alimony in futuro.  Husband appeals.  We hold that the Trial Court, in keeping with our instructions, properly excluded the trail income distributed as a marital asset in making its fresh determination of Husband's income.  We find no reversible error in the Trial Court's finding as to Husband's income, nor do we discern any abuse of discretion in the Trial Court's alimony decision.  We affirm the judgment of the Trial Court and remand for an award to Wife of her reasonable attorney's fees and costs incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

David K. Calfee, Cleveland, Tennessee, for the appellant, Roger Darnell Fuller.

---

[1] "Trail income," a term used throughout this Opinion, means the residual income from assets previously sold but still being managed.

James F. Logan, Jr., and Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Erin Alford Fuller.

## **OPINION**

### **Background**

This divorce matter is before us once again. To review, Wife and Husband were married in the state of California in 1988. Two children were born of the marriage, both of whom are now of majority age.[2] In December 2014, Wife filed for divorce. This case was tried over the course of two days in November and December 2015. Husband, who works in financial planning, was age 52 and Wife, a nurse, was 50. In January 2016, the Trial Court entered its final judgment, which Husband appealed. In *Fuller v. Fuller*, No. E2016-00243-COA-R3-CV, 2016 WL 7403791 (Tenn. Ct. App. Dec. 21, 2016), we affirmed, in part, and vacated, in part, the Trial Court's judgment. As pertinent to this appeal, we stated and instructed[3]:

VI. Father's Income and Child Support

Father also asserts that the trial court erred in determining the amount of his income for the purpose of setting child support. According to Father, the trial court failed to deduct the "ordinary and reasonable expenses of self-employment necessary to produce income" pursuant to the Tennessee Child Support Guidelines. *See* Tenn. Comp. R. & Regs. 1040-2-4-.04(3)(a)(3). Father appears to be correct because the trial court's only finding with regard to Father's income was that he "has income over the last two years of approximately two hundred thousand dollars, even though his summary exhibit on Exhibit 5 shows less than that." The trial court utilized the annual income amount of $200,000 when calculating Father's child support obligation on the child support worksheet. The parties' tax records demonstrate that an average of $200,000 for the two years prior to trial would be nearest to the gross revenue of Legacy without any deduction of ordinary and reasonable expenses as required by the guidelines.

---

[2] Husband represents that the parties have reached an agreement concerning any lingering child support obligations and that all issues involving the parties' children are moot. No issues concerning child support are raised.

[3] While the initial portion of our Opinion quoted deals with child support, it is relevant to our discussion further in the Opinion concerning alimony.

We also note another question concerning the trial court's determination of Father's income. In basing Father's income amount on the total revenue from Legacy, the court appears to have included the trail income that was also divided as a marital asset. As Tennessee Code Annotated § 36-4-121(b)(1)(E) (Supp. 2016) provides:

> Property shall be considered marital property as defined by this subsection (b) for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose; and assets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division ....

Ergo, the trail income distributed as marital property should not be considered as income for child support purposes. For these reasons, we conclude that the trial court's determination regarding Father's income and his resultant child support obligation must be vacated.

We accordingly remand this matter to the trial court for a determination of the proper amount of Father's child support obligation. The court should make a determination regarding Father's income by deducting (1) any ordinary and reasonable expenses of self-employment necessary to produce income and (2) the amount of the trail income distributed as a marital asset. The court should consider, however, any additional income generated by this asset after the division. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E); *see also Ghorashi–Bajestani v. Bajestani*, No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *5 (Tenn. Ct. App. Sept. 24, 2013) ("[T]he trial court did not err in failing to include the principal amount of the deferred compensation account as income for child support purposes, but the court should have considered any appreciation thereon or income stream generated therefrom as income in the calculation of child support."), *perm. app. denied* (Tenn. Mar. 5, 2014).

## VII. Alimony

Father also contends that the trial court erred in its award of spousal support. The trial court awarded alimony *in futuro* to Mother in the amount of $1,500 per month. Father asserts that the award is erroneous in type, length, and amount. Without addressing the specific arguments raised by Father, we again note that the trial court erred in its determination regarding

the amount of Father's income for the reasons set forth above. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E) ("[A]ssets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division ...."). Inasmuch as the trial court considered the asset of trail income, which had been divided as marital property, as income to Father for the purpose of setting alimony, such determination is erroneous.

We therefore vacate the alimony determination and remand to the trial court with instructions to determine Father's income without consideration of the amount of the trail income distributed as a marital asset. The trial court should consider, however, any additional income generated by this asset after the division. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E). Once Father's income has been established, the trial court can make a determination regarding alimony in accordance with the applicable statutory factors. See Tenn. Code Ann. § 36-5-121(i).

*Fuller*, 2016 WL 7403791, at *7-9 (footnote omitted).

In August and September 2017, this matter was heard on remand. In December 2017, the Trial Court entered an order addressing the remanded issues. The Trial Court found that Husband inflated his business expenses and declined to find his tax returns accurate. The Trial Court stated in its order, in relevant part:

This cause came to be heard on the 29th day of August 2017 on remand from the Court of Appeals, for this Court to establish the income of Defendant after deducting ordinary and reasonable expenses to produce that income and the amount of trail income distributed as a marital asset. Previously, this Court had determined Defendant's income to be $200,000 per year. On remand and after proof, the Court took the matter under advisement, retrieved the trial exhibits from the Court of Appeals and reviewed those exhibits. More particularly, this Court reviewed Exhibits 1, 5, 16, and 17 from the original trial. Additionally, the Court reviewed the transcripts from this matter.

It was originally difficult for this Court to determine the income of Defendant because this Court did not find Defendant's tax returns to be credible. When comparing his tax returns in Exhibit 5 with his budget in Exhibit 17, and his income and expense statements from Exhibit 1, the Court finds that Defendant uses the terminology "gross and net income" to mean different things at different times, depending on his purpose. For instance, on the 2014 tax return Defendant claimed his total income was

-4-

$190,484. He inappropriately stated his rental income and failed to include Schedule C information in his testimony. The Court will note the testimony from Defendant was that he charged his business $30,000 per year for rent (which is income to him and reduced his business income), as well as an additional $6,000 per year for rent, for a total rent of $36,000 per year (income to him). It is unknown how much he allocated to depreciation. The health savings account in the amount of $6,500 paid by the business and the self-employed insurance premium payments on his behalf were not necessary to produce income from the business and are considered income to him. This Court has not been provided a list of itemized deductions from Schedule A and therefore finds that $267,000 is the gross income for the year 2014. Defendant has come forth with no additional information to prove the reasonableness and necessity of any of his deductions. For the year 2013, Defendant states his Schedule C income at $145,459. However, the gross income on Schedule C for 2013 was $233,150. It is noted the business pays for Defendant's automobile at $10,497; that he deducts $30,000 for an unknown reason; that his meals in the amount of $2,738 are deducted and his "other expenses" in the amount of $15,017 are deducted. There is no documentation to back up any of these deductions. On Schedule E where he did reflect his rent received in the amount of $36,000 he also took out $6,789 for depreciation, $261 for amortization which both should be added back to his $11,659 net rent, and these added to his income would certainly put his 2013 income from Line 22 of his 2013 tax return in the $200,000 range. Additionally, Defendant deducted $6,450 for his health savings account, which was not necessary to produce his income as stated above. Defendant also deducted $10,000 he put in his retirement and $11,506 for self-employed health insurance premiums.

This Court does not find additional deductions in the amount of $30,000 for 2014 to be supported by any proof and his car and truck expense should be added to his income. Exhibit 5 to the August 29, 2017 hearing shows that while this case was pending, Defendant produced $60,000 less in commission in 2015 than he did in 2014.

The Court does not find Defendant's 2015 numbers to be accurate nor part of the proof in this case. There is no supporting documentation for his claimed $83,354 in business expenses in 2014 nor his $87,691 in business expenses for 2013. The Court has previously found that the trail, which is an income generating asset, was properly valued during the divorce hearing.

***

-5-

Defendant is purchasing Plaintiff's interest in that asset at the rate of $2,000 per month. Additionally that trail generates income. In 2015 it generated income in the amount of $180,865; and in 2014 in the amount of $175,949. Those numbers are not manipulable by Defendant and therefore this Court finds those reliable numbers to consider as part of his income. Striking in these comparisons is Exhibit 17, which shows $227,028 as gross year-to-date income (2011) compared to Exhibit 1 to the August 2017 hearing. On the Exhibit 17, Defendant lists his yearly expenses for his business at $27,753. On his Exhibit 1 for August 29, 2017 hearing, he listed his business expenses as $75,599 with no supporting documentation. Deducting his Exhibit 17 (prior to divorce) number of $27,753 from his gross revenue of $227,000 leaves his gross revenue of $200,000 in the year 2011, gross rental income with undocumented expenses which, even if taken as true, would cause his 2011 income to be $216,000. Between 2014 and 2015 Defendant testified his commission income, meaning the amount he was generating on a yearly basis for work he had done in the previous year, declined over $60,000. This likewise, was without explanation or proof. The Court does not find his documentation or testimony credible.

***

The Court therefore finds the average gross compensation for 2014 and 2015 to be $273,596. Defendant's claimed business expenses are not credible, not documented and unreasonable as compared to what he claimed in 2011, which was prior to being involved in court. His claimed business expenses in the amount of $83,351 for 2014 and $91,570 for 2015 are unsupported.

For 2014, the Court has no proof of expenses that were deducted from the gross rental income, but even taking that number as true and deducting additional approximately $43,351 in undocumented business expenses in 2014 and $40,000 in 2015; the Court finds that the 2014 income to be $223,698 and the 2015 income to be $240,143. Because these amounts are more than the amount originally found in this case, after deducting the $2,000 per month Defendant is paying to purchase the trail income producing asset, the Court sets his true income at $199,698 for 2014 and $216,143 for 2015.

***

To determine the amount of alimony payable to Plaintiff, the Court had previously found that Plaintiff needed $1,500 per month to meet her

reasonable monthly expenses. Based upon the mandate from the Court of Appeals, the Court sets Defendant's average gross monthly income at $16,641.50 for 2014 and after deducting the $2,000 payment to wife to buy her out of the trail asset. The Court finds that Defendant inflated his personal expenses and that many of those expenses he was claiming as his own personal monthly expenses, he has also deducted as business expenses from his business. Based upon this lack of credibility, the Court finds the Defendant has the ability to pay over $2,000 in that he is giving more than $2,000 to charity. The Court previously found Plaintiff was economically disadvantaged. Defendant pays his car payment through his business, he deducts bills, he receives $30,000 - $36,000 in income from the rent of the building he owns for which his business pays him. Based upon the above findings and Defendant's monthly income and that it is at or above that previously set by this Court, the Court finds that even after deducting the amount he is paying to buy Plaintiff out of the asset of the business, he is capable of and able to pay $1,500 per month in alimony. Child Support is set at $1,522.00 per the Guidelines and the attached worksheet.

Husband subsequently filed a motion to alter or amend and to make additional findings of fact. In April 2018, the Trial Court entered an order disposing of Husband's motion. The Trial Court stated, in part:

The Court notes that Defendant's commission income, which he earns on a yearly basis, was drastically reduced during the year the parties were engaging in a divorce process. This is within Defendant's control. In looking at Defendant's past production, his commission rates each year, his lifestyle and the fact he did not earn commission at the same rate as the two (2) prior years without explanation, the Court finds Defendant voluntarily reduced his income in an effort to avoid alimony. This is further indicated by his failure to pay child support and alimony during the pendency of this case. The Court deems a three (3) year average to be reasonable.

***

[T]he Court finds the average gross compensation for 2013, 2014 and 2015 to be $268,784.33. The Court finds the claimed business expenses in the amount of $87,691 for 2013, $83,354 for 2014 and $91,570 for 2015 are unsupported by the evidence and are unreliable. Additionally, not all of Defendant's IRS claimed deductions are necessary to produce income and some are added back as payment of living expenses and therefore income under the Child Support Guidelines. This Court added back $6,550 to each

-7-

year for the deduction Defendant took for his Health Savings Account. The burden is on the Defendant to show expenses are reasonable and necessary for producing the income. There was little testimony along this line. Previously, the Court did not find the tax returns to be reliable. The Court also adds back depreciation under the guidelines.

In Exhibit 17 of the original trial, Defendant prepared a document showing his yearly expenses without depreciation to be approximately ten percent (10%) of his gross income. This exhibit also listed expenses that may not be described as necessary to produce income, i.e. meals, entertainment, and club dues. At the February 2, 2018 hearing, Defendant attempted to add additional evidence not provided at trial. The Court did not consider this. This Court reviewed the trial exhibits and found that per Exhibit 1, entered on August 29, 2017, Defendant deducted furniture expense of $6,145, meals and entertainment of $2,739, new hardware, $1,300 credit card interest, and $10,497 in mileage. There was no supporting documentation. The yard and janitorial expenses doubled that year without explanation as claimed on Schedule E. It appears the reasonable and necessary expenses for 2013 are in the $45,000 range. These included his self-employment taxes of $8,900. Defendant claimed rent expense of $30,000 in Schedule C and $36,000 on Schedule E as income was reduced by $6,789 in depreciation, which is to be added back.

In 2014, per Exhibit 2 entered on 8-29-17, Defendant claimed car expenses in the amount of $9,731, travel, meals and entertainment of $4,364, deductible meals in the amount of $3,533 and "other" undocumented expenses in the amount of $15,656 on his tax return. The Court will add back depreciation in the amount of $6,788. Disallowing these reduces his claimed expenses of $83,354 to the $40,000 range for reasonableness.

In 2015, per Exhibit 3 entered on August 29, 2017, there are the same issues. Advertising, "other", rent, meals, entertainment expenses all appear out of line with previous proof in Exhibit 17 at trial. This particular year, during the divorce, Defendant also ran $7,529 in legal services through his company. Subtracting those amounts brings his claimed $91,000 in expenses down to $40,000 that appear reasonable and necessary. These line up with Exhibit 4 when Defendant claimed gross monthly income of $15,900 in his budget.

All of the above support this Court's original finding that Defendant had approximately $200,000, in a three year average, annual net income for 2013, 2014 and 2015.

*** 

-8-

Therefore, this Court finds Defendant has the ability to pay his economically disadvantaged ex-spouse $1,500 per month as alimony in futuro. Plaintiff's standard of living will drop drastically because of the divorce.

This amount is to be figured in the child support worksheet with the appropriate self-employment tax credit being given, as well as Defendant claiming one (1) dependent. This shall be supplied within thirty (30) days of this order or by May 18, 2018.

Husband appealed. This matter was stayed briefly pending entry of an order addressing a Rule 60.02 motion filed by Wife. According to a January 2019 order of the Trial Court, "the parties returned to open Court and announced that they had reached an agreed resolution of the issues." Thereafter, we entered an order lifting the stay. This appeal now is properly before us.

## Discussion

We restate and consolidate the issues Husband raises on appeal as follows: 1) whether the Trial Court erred in determining Husband's income; 2) whether the Trial Court erred in its alimony determination; and, 3) whether Husband is entitled to an award of attorney's fees and costs incurred on appeal. Wife raises her own separate issue of whether she, rather than Husband, should be awarded her attorney's fees and costs incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Regarding witness credibility, our Supreme Court has stated:

When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence

to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn. 2013), (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)), *cert. denied*, ⸺ U.S. ⸺, 134 S.Ct. 224, 187 L.Ed.2d 167 (2013).

*Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

We first address whether the Trial Court erred in determining Husband's income. The Trial Court found that Husband earns $200,000 per year, a figure Husband argues is too high. Husband earns income from two sources: (1) income from Legacy Investments, including trail income, and (2) rental income from his office building. Husband argues in his brief that "the proper methodology by which to calculate Husband's income is to take his Schedule C net income and add his Schedule E net income." Husband's methodology yielded an average monthly income of $12,743.17 from 2010 to 2016 prior to the deduction of the $2,000 per month trail income payment to Wife and subtraction of Husband's self-employment tax. Husband asserts further that he lost several big clients during the pendency of the case, and therefore his commission income went down. In addition, Husband points to instances where the Trial Court misinterpreted his expenses. For instance, the Trial Court added $6,450.00 and/or $6,550.00 back into Husband's income each year, sums representing Husband's contributions to a health savings account. The Trial Court identified this as a business expense. Husband also asserts error in the Trial Court's adding back of a $10,000 contribution he made for retirement.

In response, Wife argues that the Trial Court never claimed that its calculation would be exact. Wife notes that the Trial Court stated expressly that it had difficulty calculating Husband's income because it did not credit Husband's business expenses. The Trial Court, instead, found Husband's ordinary and reasonable business expenses to be around $40,000 rather than the claimed $80,000. Wife acknowledges that the Trial Court erred in some areas, such as when it added back Husband's health savings account contributions. However, Wife points out that the Trial Court also failed to add back certain "other expenses" it already had rejected as impermissible. Wife contends that the Trial Court's mistakes actually favored Husband on the whole because they lowered his income.

Initially, we agree with both parties that the Trial Court erred somewhat in its calculations. Given the state of the proof, this is not surprising. The dispositive question,

however, is whether the evidence preponderates against the figure of $200,000 arrived at by the Trial Court as to Husband's annual income. The Trial Court explicitly found Husband to not be credible. We defer heavily to a trial court's credibility determination absent clear and convincing evidence to the contrary. Here, no such clear and convincing evidence exists. Husband argues that the documents show what they show, and Husband's individual credibility is not a relevant factor. We disagree with Husband that the Trial Court was required to accept his numbers in the documents at face value. Tax returns obviously can be useful to determining someone's income, but they are not necessarily foolproof or beyond question.

The Trial Court made several findings adverse to Husband in its orders. The Trial Court found that Husband "voluntarily reduced his income in an effort to avoid alimony." In addition, the Trial Court found that "the claimed business expenses in the amount of $87,691 for 2013, $83,354 for 2014 and $91,570 for 2015 are unsupported by the evidence and are unreliable." The evidence does not preponderate against these findings. In opposition, Husband relies on innocuous explanations that were rejected as not credible by the Trial Court.

The Trial Court was tasked with determining Husband's income without including his trail income distributed as part of the marital estate. That was achieved on remand. The figure of $200,000 is an imprecise one, but it is one that comports with the evidence available to the Trial Court in view of the Trial Court's rejection of certain of Husband's expenses as well as his explanations. We find no reversible error. We affirm the Trial Court in its determination of Husband's income.

We next address whether the Trial Court erred in its alimony determination. As our Supreme Court has instructed regarding spousal support:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor. . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

When making alimony decisions, courts are to consider the factors contained in Tenn. Code Ann. § 36-5-121, which, in pertinent part, provides:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2017).

Our Supreme Court has articulated the two most important factors to a court's alimony decision as follows:

> Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs*, 250 S.W.3d at 457. *See also Bratton*, 136 S.W.3d at 605; *Robertson*, 76 S.W.3d at 342; *Burlew*, 40 S.W.3d at 470. Carefully adhering to the statutory framework for awarding spousal support, both in terms of awarding the correct type of support and for an appropriate amount and time, fulfills not only the statutory directives but also alimony's fundamental purpose of eliminating spousal dependency where possible.

*Gonsewski*, 350 S.W.3d at 110.

Husband argues that the Trial Court erred in its orders by failing to apply the statutory factors. Husband is correct in that the Trial Court's orders on remand focus primarily on the dispute over his income and do not elaborate on its rationale for an award of alimony to Wife. We note, however, that the Trial Court did find Wife to be the economically disadvantaged spouse; that Wife needed $1,500 per month to meet her reasonable needs; and that Husband has the ability to pay this amount. The evidence does not preponderate against these findings.

With respect to Wife's need for alimony, Husband asserts that she is not just "scraping by." Husband notes that she is a nurse who earns $22.64 per hour, with the capacity to earn more. Wife's 2016 W-2 reflected $56,454.89 in gross income. Wife is trained as both an RN and an x-ray technologist. Husband points out that Wife was awarded the marital residence and ten acres of property, whereas he lived in a twelve hundred square foot apartment at the time of trial. Wife receives $2,000 per month as her portion of Husband's trail income. Wife's health is not an obstacle to her working. Husband also takes issue with Wife's personal expenses. In sum, Husband contends Wife failed to establish any need for alimony.

Husband may be correct that Wife is not scraping by, in general terms, but that is not all there is to be considered. The parties' lifestyle during the marriage is a relevant statutory factor. This is a marriage of 27 years, with two children raised during the marriage. Husband earns much more than Wife. Although Wife already is well-educated and thriving in her field, she is an economically disadvantaged spouse relative to

-14-

Husband. There is no realistic room for rehabilitation for her. Wife has to pay taxes on her alimony award, as well.[4]

As to Husband's skepticism toward Wife's expenses, she reported monthly expenses of $5,099.70 as of the original hearing and $5,733.31 at the remand hearing. Husband reported monthly expenses of $9,013.75 and $15,519, respectively. As is often the case in divorces, the parties each robustly defend his or her personal expenses as completely necessary and attack the other's expenses as exaggerated. We reiterate that Wife is an economically disadvantaged spouse relative to Husband. The parties are in their mid-50s, and this was a marriage of long duration. A review of all relevant statutory factors including, among others, the duration of the marriage, the earning capacity of the parties, the parties' prior divorce standard of living, and the tax consequences support the Trial Court's decision. It was appropriate for the Trial Court to place—or attempt to place as best it could given the parties' economic circumstances—Wife on an economic level comparable to Husband given the facts of the case. We find no abuse of discretion in the Trial Court's decision to award Wife alimony in futuro at the rate of $1,500 per month.

The final issue we address is whether either party is entitled to an award of attorney's fees and costs incurred on appeal. Both parties agree that this is a decision that falls within our discretion. Given that Wife has prevailed on appeal, and, in consideration of the equities of the case, we find Wife is entitled to her attorney's fees incurred on appeal. We remand to the Trial Court for the determination and award to Wife of her reasonable attorney's fees and costs incurred on appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below and for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellant, Roger Darnell Fuller, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[4] Alimony awards entered before January 1, 2019 are taxable to the recipient and deductible to the payor. Pub. L. No. 115-97, § 11051.

-15-